HAUPT & BURGI ET AL. v. UNITED STATES

No. 4608.—Invoices dated Marseille, France, December 26, 1934, etc.
Certified December 28, 1934, etc.
Entered at New York January 11, 1935, etc.
Entry No. 774341, etc.

(Decided June 21, 1939)

Brooks & Brooks (Frederick W. Brooks, Jr., of counsel) for the plaintiffs.
Webster J. Oliver, Assistant Attorney General (William J. Vitale, special attorney), for the defendant.

EVANS, Judge: This case consists of a number of appeals to reappraisement from the finding of value made by the appraiser on importations of roquefort cheese. By consent of counsel they have been consolidated for trial as of the initial case. At the hearing the plaintiff introduced a number of witnesses representing each of the importers who had testified to familiarity with the respective importations and each of whom had been engaged for many years in the importation of roquefort cheese. One of the firms, to wit, Robin Packing Co., in addition to having been in the business of importing and distributing this type of merchandise, had likewise been engaged for a long time in cutting and packing the roquefort cheese into so-called portion packages.

The instant cheese was appraised on the basis of foreign value under the provisions of section 402 (c) of the Tariff Act of 1930. It was imported during the early part of 1935. The appraiser found a value of 1,300 francs per 100 kilos plus packing. The importer claims that the correct foreign value is 1,100 francs per 100 kilos plus packing.

At the trial of the case it was agreed that the merchandise is dutiable on the basis of foreign market value.

According to the testimony of the importer's witnesses, the cheese involved herein is similar in all material respects to the merchandise involved in the case of *United States* v. *Kraft Phenix Cheese Corp. et al.*, 26 C. C. P. A. 224, C. A. D. 21. Upon the basis of such testimony attorney for the plaintiff offered in evidence the record in said case. The Government objected to the incorporation of that record in the instant case and the objection was sustained. In the case of *United States* v. *Bosca, Reed, MacKinnon Co. et al.*, 24 C. C. P. A. 364, T. D. 48829, the Court of Customs and Patent Appeals held that before the record could be incorporated over objection, it must be shown that the parties are the same, the merchandise substantially the same, and the issues precisely the same. This decision was adhered to on rehearing in 25 C. C. P. A. 42, T. D. 49040. The instant ruling follows that decision.

On the merits the importer produced in evidence an affidavit (Exhibit 3) of Gabriel Vernieres, who was a member of the firm of Vernieres Frères, producers and sellers of roquefort cheese and the manufacturer of all the cheese in controversy here. The statements contained in said affidavit are in part as follows:

\* \* \* that he is and has been for more than five years last past a member of the firm of Vernieres Freres, producers and sellers of Roquefort cheese for many years in France, and has personal knowledge of the methods of production, and the transactions of deponent's firm, and because of deponent's personal contacts with the trade in France, he has personal knowledge of the customs of the trade and the usual wholesale quantities in selling said cheese in France for home consumption or export.

Deponent further states that he has personal knowledge of the kind and quality of the Roquefort cheese shipped by its firm to Messrs. Haupt & Burgi, Roethlisberger & Co., Robin Packing Co., and Borden Sales Co., by the SS. "Champlain" on or about January 3, 1935, SS. "Lafayette" on or about January 18, 1935 and February 11, 1935, and SS. "Ile de France" on or about January 31, 1935 and February 21, 1935, which was of the same kind and quality as the Roquefort cheese sold and delivered by deponent's firm in France for home consumption in the following transactions, which are in the usual wholesale quantities and in the ordinary course of trade for domestic consumption in France during these months, and at which prices deponent's firm freely offered this cheese during this period to all purchasers in France in the said usual wholesale quantities in which the major portion of sales were made during these months * * *.

Thereafter follows a listing of three groups of sales sworn to have been made in the months of January and February 1935. Each group gives the name of the customer and city in which the customer is located, the number of loaves of cheese on each invoice, the weight in kilos, the price per hundred kilos, and the total price in each invoice. This record shows eighteen sales at a price of 1,200 francs per 100 kilos. The second group shows seven sales at a price of 1,080 francs per 100 kilos. The quantities in this group vary from 200 loaves to 360 loaves per invoice, whereas in the first group the number of loaves ranges from 18 to 60. The third group on the page consists of four sales, two of which were at a price of 1,300 francs and two at a price of 1,330 francs per 100 kilos. The smallest quantity in this group was 13.6 kilos and the largest 27.1 kilos. Inasmuch as each of these groups lists the price on the basis of 100 kilos we assume that is the usual wholesale quantity.

At the trial the importer's attorney stated that his claim was that the dutiable value of the merchandise was 1,100 francs per 100 kilos and that that was the foreign market value. While the witness testified that the cheese here involved made by Vernieres Frères and that involved in the *Kraft Phenix Cheese Corp.* case, *supra*, are similar in material, quality, and suitability for cutting, that testimony is of little assistance in enabling the court to arrive at a value for the instant merchandise (which was exported during approximately the same period), because of the fact that the decision in the *Kraft Phenix* case shows that various brands of cheese were involved and different values were found by the court for various brands (Reap. Dec. 4223). There is no evidence before us as to which of these brands the instant cheese bears a similarity. Moreover, the division of the court in said majority opinion, in summarizing the testimony upon which they based their decision, stated that the testimony of one witness, which was not rebutted, was to the effect that the "Roquefort Cheese Association sold 98 per centum of the Roquefort cheese, and of the other 2 per centum the firm of Vernieres [the manufacturer in the case now before us] sold the greater part." Therefore, the court would be bound by the decision in the *Kraft*

*Phenix* case, *supra*, as the sales there referred to represented the majority of sales.

Furthermore, the prevailing opinion of the division found that the cheese involved in the *Kraft Phenix* case was a different type of cheese from the so-called standard roquefort and had been "differently manufactured of the same materials." No witness in the case before us gave testimony as to the method of manufacture nor was any claim asserted here that cheese suitable for cutting into portions was a different type cheese. In fact the contention of these witnesses and such as testified in the *Kraft Phenix* case was to the effect that all roquefort cheeses are of the same type and all are manufactured in the same manner. This leaves the court with only the evidence of value to be that found in the affidavit, Exhibit 3.

I do not agree with the Government attorney as to the construction of the effect of Exhibit 3, the affidavit of Gabriel Vernieres, in that the statements therein were "merely conclusions on the part of the affiant not borne out by any material evidence either documentary or otherwise." Said affidavit, after referring to sales listed therein, states in general terms that the merchandise in those sales was of the same kind and quality as the roquefort cheese sold and delivered by deponent's firm in France for home consumption, which were in the usual wholesale quantities and in the ordinary course of trade for domestic consumption in France during those months, and at which his firm freely offered this cheese during this period to all purchasers in France in said usual wholesale quantities in which the major portion of sales were made during the months in which the instant merchandise was exported. The latter part of the foregoing statement is in conformity with the definition of foreign value as set forth in section 402 (c) of the Tariff Act of 1930.

I therefore find that there is a foreign market value for the merchandise involved herein, which is the dutiable value, and that such value is 1,200 francs per 100 kilos, plus packing as invoiced.

Judgment will be rendered accordingly. It is so ordered.